FILED
2021 Jul-07  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# <u>SOUTHERN DIVISION</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **No.** |
| | ) |
| **CHRISTOPHER JOHN ANDRUKAITIS** | ) |
| **Defendant.** | ) |

## PLEA AGREEMENT

The Government and Defendant, **CHRISTOPHER JOHN ANDRUKAITIS,** hereby acknowledge the following plea agreement in this case:

## <u>PLEA</u>

The defendant agrees to plead guilty to **COUNT ONE** of the Information filed in the above numbered and captioned matter, consent to an order of forfeiture as set out below, and pay restitution to the victims determined by the Court at the time of sentencing.   In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney agrees to recommend the disposition specified below.

## <u>TERMS OF THE AGREEMENT</u>

## I. <u>MAXIMUM PUNISHMENT</u>

1

Defendant's Initials ⟨JA⟩

The defendant understands that the maximum statutory punishment that may be imposed for the crime of Conspiracy to Commit Interstate Transportation of Stolen Goods, in violation of Title 18, United States Code, Section 371, as charged in COUNT ONE is:

a.   Imprisonment for not more than 5 years;

b.   A fine of not more than $250,000, or,

c.   Both (a and b);

d.   Supervised release of not more than 3 years; and

e.   Special Assessment Fee of $100.

## II. FACTUAL BASIS FOR PLEA

**The Government is prepared to prove, at a minimum, the following facts at the trial of this case:**

The Defendant CHRISTOPHER JOHN ANDRUKAITIS ("ANDRUKAITIS") is an individual resident of Shelby County, Alabama within the Northern District of Alabama.   Co-conspirator #1 is the spouse of ANDRUKAITIS and they live together in a residence located in Shelby County, Alabama.   Co-conspirator #2 is the mother of ANDRUKAITIS. Co-conspirator #2 lives within the Northern District of Alabama.

2

Defendant's Initials CJA

At all times relevant to this case, Co-conspirator #1 and the Defendant ANDRUKAITIS operated an online eBay business named "Sweet Tea Sunshine Shop". The online business was operated out of their residence in Shelby County, Alabama, within the Northern District of Alabama. Sweet Tea Sunshine Shop had an eBay account where the business advertised products for sale including, but not limited to, baby formula. The eBay account was registered on or about April 9, 2018 with the user ID identified as "hoho10". The ID "hoho10" is also used as part of an email address that is associated with Co-conspirator #1. eBay is a virtual retail sales site that allows sellers anywhere in the world to post new or used goods for sale at a set price, or to conduct online auctions for goods. Goods sold via eBay are generally delivered, transported, and transferred by mail and other means of interstate commerce.

The Sweet Tea Sunshine Shop received orders online for baby formula and they filled the orders by shipping stolen baby formula through the U.S. Postal Service or Federal Express to customers located outside of the state of Alabama. The Sweet Tea Sunshine Shop eBay account received money from eBay sales at Sweet Tea Sunshine Shop into PayPal account ending -1877 which is registered in

Defendant's Initials CJA

the name of Co-conspirator #1.   The PayPal account is also associated with the same "hoho10" email address associated with Co-conspirator #1.

Between September 2018 and October 2020, while the Defendant ANDRUKAITIS and Co-conspirator #1 managed the Sweet Tea Sunshine Shop online eBay business, the Defendant drove Co-conspirator #2 around the Northern District of Alabama to various retail store locations that sold baby formula. Co-conspirator #2 went into retail store locations and stole baby formula by placing cans of baby formula in a large purse or bag and exiting the store without paying for the baby formula. The Defendant picked up Co-conspirator #2 after she exited the retail store locations with the stolen baby formula. The Defendant and Co-conspirator #1 sold the stolen baby formula on the Sweet Tea Sunshine Shop eBay store.   Between September 2018 and October 2020, nearly all of the proceeds received into PayPal account -1877 were proceeds from the fraudulent sales and transportation of stolen baby formula.

In furtherance of the conspiracy and to achieve the objectives thereof, ANDRUKAITIS and the other co-conspirators committed the following acts, among others, in furtherance of the scheme within the Northern District of Alabama and elsewhere.

Defendant's Initials CJA

ANDRUKAITIS and Co-conspirator #1 exchanged text messages in furtherance of the scheme. Specifically, on or about February 18, 2019, Co-conspirator #1 sent a text message to ANDRUKAITIS stating "Let your mom run in Target alone." ANDRUKAITIS replied "Think I will". Co-conspirator #1 replied to ANDRUKATIS with a text message stating "Let her walk in w Whole Foods bags and fill up, and walk around and push out".

Additionally, on or about May 6, 2019, the Defendant ANDRUKAITIS sent a text message to Co-conspirator #1 stating "I've made a beast dent in this list". Co-conspirator #1 replied to ANDRUKAITIS with a text message that stated "Wowow". ANDRUKAITIS replied "The whole car is filled with formula".

On or about April 8, 2020, law enforcement conducted surveillance and observed the Defendant ANDRUKAITIS pick up Co-conspirator #2 at her apartment in Hoover, Alabama in a black Acura MDX. ANDRUKAITIS drove Co-conspirator #2 to a Publix supermarket located in Hoover, Alabama. Co-conspirator #2 entered the Publix and stole multiple cans of baby formula and exited without paying. Co-conspirator #2 was picked up by the same black Acura MDX.

On or about April 28, 2020, the Defendant ANDRUKAITIS drove Co-conspirator #2 to a Publix supermarket located in Hoover, Alabama. Co-

5

Defendant's Initials ＳＡ

conspirator #2 concealed baby formula in a large purse and exited the store.   Upon exiting the store, Co-conspirator #2 was detained by Hoover Police regarding a report of shoplifting.   On or about April 28, 2020, Defendant ANDRUKAITIS sent a text message to Co-conspirator #1 saying "Help we got caught."   ANDRUKAITIS and Co-conspirator #1 continued to engage in a lengthy text chain regarding the contact with Hoover Police Department.   Ultimately, ANDRUKAITIS and Co-conspirator #2 were released by the Hoover Police Department.   Following the contact with law enforcement, ANDRUKAITIS and his co-conspirators were not deterred.   The next day on April 29, 2020, Walmart Global Investigation provided law enforcement with surveillance images from the Walmart store in Leeds and Trussville, Alabama, where Co-conspirator #2 is observed on video entering the Walmart stores and stealing baby formula.

Between April 2020 and October 2020, Walmart provided law enforcement with surveillance photos and videos of at least 140 unique instances where Co-conspirator #2 shoplifted baby formula from Walmart stores in the Northern District of Alabama.   For example:

- On or about July 21, 2020, the Defendant ANDRUKAITIS drove Co-conspirator #2 in a black MDX vehicle to Walmart stores located in

6

Defendant's Initials _CJA_

Gardendale, Hartselle and Madison, Alabama within the Northern District of Alabama.   Co-conspirator #2 entered the Walmart stores and stole multiple cans of baby formula by placing the baby formula in a large bag. Co-conspirator #2 exited the Walmart stores without paying for the baby formula.

- On or about September 21, 2020, the Defendant ANDRUKAITIS drove Co-conspirator #2 in a gray Honda Accord vehicle to Walmart stores located in Cullman, Gardendale, Hartselle, Huntsville, Decatur and Madison, Alabama within the Northern District of Alabama.   Co-conspirator #2 entered the Walmart stores and stole multiple cans of baby formula by placing the baby formula in a large bag.   Co-conspirator #2 exited the Walmart stores without paying for the baby formula.

- On or about September 28, 2020, the Defendant ANDRUKAITIS drove Co-conspirator #2 to a Walmart store located in Madison, Alabama within the Northern District of Alabama.   Co-conspirator #2 entered the Walmart store in Madison, Alabama and stole multiple cans of baby formula by placing the baby formula in a large bag.   Co-conspirator #2 exited the Madison, Alabama Walmart without paying for the baby formula.

7

Defendant's Initials _CJA_

- On or about October 5, 2020, the Defendant ANDRUKAITIS drove Co-conspirator #2 to Walmart stores in Madison and Decatur, Alabama within the Northern District of Alabama. Co-conspirator #2 entered the Walmart stores in Madison and Decatur, Alabama and stole multiple cans of baby formula by placing the baby formula in a large bag. Co-conspirator #2 exited the Walmart stores without paying for the baby formula.

Between April 2020 and October 2020, law enforcement located and monitored the Sweet Tea Sunshine Shop and observed that the eBay store was open and actively engaged in the business of selling baby formula. Investigators worked with Walmart Global Investigators to conduct controlled buys of baby formula that were shipped in interstate commerce.

On or about July 31, 2020 and August 2, 2020, Co-conspirator #2 shoplifted baby formula from a Walmart store located in Leeds, Alabama. Walmart Global Investigations had previously marked certain baby formula items located in the Leeds, Alabama store. Walmart Global Investigations made a controlled purchase of baby formula and on August 6, 2020, Similac Pro Advance baby formula was shipped from the Sweet Tea Sunshine Shop in Alabama to an address in Champlin, Minnesota. The Similac Pro Advance baby formula was recovered by Walmart

8

Defendant's Initials _____ CJA

Global Investigations. The Similac Pro Advanced shipped by Sweet Tea Sunshine Shop had the undercover markings from the Walmart store in Leeds, Alabama.

On or about August 19, 2020, Co-conspirator #2 shoplifted baby formula from a Walmart store located in Trussville, Alabama.   Walmart Global Investigations had previously marked certain baby formula items located in the Trussville, Alabama store.   Walmart Global Investigations made a controlled purchase of baby formula and on or about August 24, 2020, a package of Enfamil Infant baby formula was shipped from the Sweet Tea Sunshine Shop in Alabama to an address in Bartlett, Illinois. The Enfamil Infant baby formula shipped by Sweet Tea Sunshine Shop had the undercover markings from the Walmart store in Trussville, Alabama.

As a result of the conspiracy described above and the subsequent interstate transportation of stolen baby formula, between September 2018 and October 2020, the Defendant and his co-conspirators generated more than approximately $300,000 in criminal proceeds from the sale of stolen baby formula by the Sweet Tea Sunshine Shop online eBay store. Proceeds from the fraudulent sales were deposited into the PayPal account -1877 and were converted to the personal use and benefit of Defendant ANDRUKAITIS and his co-conspirators.

9

Defendant's Initials _____

The PayPal account – 1877 was linked to an American Express account numbered *5510 that was controlled by one or more conspirators taking part in the above-described conspiracy to commit interstate transportation of stolen baby formula (AMEX *5510). Between in or around September 2018 and in or August 2020, thousands of dollars of proceeds generated by the above-described conspiracy to commit interstate transportation of stolen baby formula flowed from PayPal - 1877 into AMEX *5510, and then into a Wells Fargo Bank account ending in 8826 (Wells Fargo *8826) that was also controlled by one or more of the conspirators.

Between in or around February 2020, and in or around August 2020, approximately $85,500 in proceeds, most or all of which was generated by the above-described conspiracy to commit interstate transportation of stolen baby formula, flowed from AMEX *5510 into Wells Fargo *8826. Between in or around July 2020 and in or around August 2020, alone, one or more conspirators transferred or caused to be transferred at least $10,000 of such proceeds from AMEX *5510 into Wells Fargo *8826. Also, between in or around May 2020 and in or around August 2020, one or more conspirators caused approximately $13,399 to flow, through various transactions, from Wells Fargo *8826 into TD Ameritrade *8728. A portion

10

Defendant's Initials _CJA_

of this sum represented proceeds of the above-described conspiracy to commit interstate transportation of stolen baby formula.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence.   The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

_____
**CHRISTOPHER JOHN ANDRUKAITIS**

## III.   <u>RECOMMENDED SENTENCE</u>

Subject to the limitations in paragraph VIII regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the Government will recommend the following disposition:

(a)    That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility.   The government may oppose any adjustment for acceptance of responsibility if the defendant (a) fails to admit to each and every item in the factual basis of which he has

11

knowledge; (b) denies involvement in the offense; (c) gives conflicting statements about the defendant's involvement in the offense; (d) is untruthful with the Court, the Government, or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw the plea of guilty for any reason other than those expressly enumerated in the Limited Waiver of Right to Appeal and Post-Conviction Relief section of this plea agreement;

(b)     That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the United States Sentencing Guideline range as determined by the court on the date that sentence is pronounced;

(c)     That following the term of imprisonment imposed by the court, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3;

(d)     That the defendant be required to pay a fine in accordance with the

12

Defendant's Initials _____

sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid, in accordance with his ability to pay, in full by the expiration of the term of supervised release;

(e)    That the defendant be required to pay restitution, joint and several with any convicted co-conspirators, to the victim as ordered by the court on the date sentence is pronounced;

(f)    That the court enter a final order of forfeiture against the defendant in the amount of $152,000, pursuant to Fed. R. Crim. P. 32.2(b)(l) and the Information's Notice of Forfeiture; and

(g)    That the defendant pay a special assessment fee of $100.00 said amount due and owing as of the date sentence is pronounced.

## IV.   **WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF**

**In consideration of the recommended disposition of this case, I, CHRISTOPHER JOHN ANDRUKAITIS, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose.    Further, I waive and give up the right to challenge my conviction and/or sentence, any fines,**

13

Defendant's Initials _____

restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding the following:

(a)    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

(b)    Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

(c)    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, CHRISTOPHER JOHN ANDRUKAITIS, hereby place my signature

14

Defendant's Initials CJA

**on the line directly below to signify that I fully understand the foregoing**

**paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

_[signature]_

**CHRISTOPHER JOHN ANDRUKAITIS**

## V.   UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United

States Supreme Court's decision in United States v. Booker, the federal sentencing

guidelines are **advisory** in nature.   Sentencing is in the court's discretion and is no

longer required to be within the guideline range.   The defendant agrees that,

pursuant to this agreement, the court may use facts it finds by a preponderance of

the evidence to reach an advisory guideline range, and defendant explicitly waives

any right to have those facts found by a jury beyond a reasonable doubt.

## VI.   AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the

Court's duty to impose sentence upon the defendant and that any sentence

recommended by the government is **NOT BINDING UPON THE COURT,** and

that the Court is not required to accept the government's recommendation.   Further,

the defendant understands that if the Court does not accept the government's

15

Defendant's Initials _CJA_

recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. **VOIDING OF AGREEMENT**

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, this agreement will become NULL and VOID.  In that event, the Government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII.  **SUBSEQUENT CONDUCT**

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraph III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in its sole discretion.**

## IX.  **OTHER DISTRICTS AND JURISDICTIONS**

The defendant understands and agrees that this agreement **DOES NOT BIND**

16

Defendant's Initials _____

any other United States Attorney in any other district, or any other state or local authority.

## X.   COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs.   The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful.   Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## XI.   AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts.   The defendant understands and agrees that the relevant conduct contained in the factual

Defendant's Initials _CJA_

basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines.   The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct.   This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct.   Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XII.   TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless   otherwise   specified   herein,   the   defendant   understands   and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.   Under federal law, a broad range of crimes are removable offenses, including the offense(s) to   which   defendant   is   pleading   guilty.    Removal   and   other   immigration

18

Defendant's Initials

consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.   Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that he plea may entail, even if the consequence is his automatic removal from the United States.

## XIII.   FORFEITURE

The defendant agrees to identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest.   The defendant agrees to take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant.   The defendant agrees to undergo any polygraph examination the government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant agrees to consent to the immediate entry of a final order of forfeiture against him in the amount of $152,000, pursuant to Fed. R. Crim. P. 32.2(b)(l) and the Information's Notice of Forfeiture.   This sum represents proceeds

Defendant's Initials _____

the defendant personally obtained, controlled, and benefitted from as a result of the offense alleged in the Information's Count One to which the defendant is indicating a desire to plead guilty by way of this written Plea Agreement.  For purposes of entering said order of forfeiture, the defendant acknowledges that a nexus exists between said *amount* and the criminal offense(s) to which the defendant is pleading guilty.  The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. To the extent that the Government forfeits any assets belonging the defendant in any civil-forfeiture proceeding or via substitute-assets motion, as discussed below, the Government agrees to credit the net proceeds generated by those assets against any forfeiture money judgment entered against the defendant.

The defendant acknowledges that if, due to an act or omission of the defendant, proceeds of the defendant's offense(s): (i) cannot be located upon the exercise of due diligence; (ii) have been transferred or sold to, or deposited with, a third party; (iii) have been placed beyond the jurisdiction of the court; (iv) have been substantially diminished in value; or (v) have been commingled with other property which cannot be divided without difficulty, as a result, the Government is authorized

Defendant's Initials _CJX_

under law to seek the forfeiture of any and all assets, with the exception noted below, of the defendant as substitute assets for the purpose of satisfying the final order of forfeiture until same is satisfied in full. The Government agrees not to seek *forfeiture* of the defendant's primary residence located at 662 Chelsea Station Cir., Chelsea, AL 35043. This does not affect the Government's ability and obligation to use all its available tools to collect full restitution for victims, as required by applicable law.

The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Federal Rules of Criminal Procedure 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including any

21

Defendant's Initials _____

Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Information and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

## XIV.  DEFENDANT'S UNDERSTANDING

22

Defendant's Initials ____

I have read and understand the provisions of this agreement consisting of twenty-four pages.   I have discussed the case and my constitutional and other rights with my lawyer.   I am satisfied with my lawyer's representation in this case.   I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence.   I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

N/A      N/A

(if none, write N/A)

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

23

Defendant's Initials_____

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

_____
DATE

_____
**CHRISTOPHER JOHN ANDRUKAITIS**
**Defendant**

## XV. <u>COUNSEL'S ACKNOWLEDGMENT</u>

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses.   My client has conveyed to me that my client understands this Agreement and consents to all its terms.   I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment.   I concur in the entry of the plea on the terms and conditions set forth herein.

_____
DATE

_____
**JEFFREY D. BRAMER, ESQ**
**Defendant's Counsel**

24

Defendant's Initials _____



25

Defendant's Initials_____

## XVI. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
**United States Attorney**

_June 15, 2021_
DATE

_Robin B. Mark_

**ROBIN B. MARK**
**Assistant United States Attorney**

26

Defendant's Initials _CJA_